IN THE UNITED STATES BANKRUPTCY COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| SHADRACH, MESHACH & ABEDNEGO, INC., | ) | |
| EIN: XX-XXX8207 | ) | CASE NO. 17-81731-CRJ11 |
| | ) | |
| Debtor. | ) | CHAPTER 11 |
| | ) | |

**MOTION TO SELL SUBSTANTIALLY ALL OF THE
DEBTOR'S OPERATING ASSETS AND INTELLECTUAL PROPERTY
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**

COMES NOW, Debtor and Debtor-in-Possession, Shadrach, Meshach & Abednego, Inc., ("Debtor"), by and through its undersigned counsel, and pursuant to §§ 105(a), 363(f), and 1109(b) of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Ru1es"), moves this Court (this "Motion") to enter an order permitting Debtor to sell (the "Sale") certain of the Debtor's assets (as defined below, the "Target Assets"), free and clear of all liens, claims, interests, and encumbrances. In support of this Motion, Debtor states as follows:

**JURISDICTION AND VENUE**

1. On June 10, 2017 (the "Petition Date"), Debtor filed with the Clerk of this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor continues to operate its business as Debtor in possession pursuant to §§ 1l07(a) and 1108.

2. This Court has subject matter jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

3. Debtor is a privately held company headquartered in Madison, Alabama, that manufacturers and sells parking lot sweeper machines. Debtor was formerly known in the industry as Victory Sweepers, Inc. ("Victory Sweepers"). Debtor employs eight employees and has arrangements with two contractors to provide services for it. Debtor was founded in 2006 by Mark R. Schwarze.

4. Debtor's bankruptcy filing has been precipitated by a variety of factors that have led to a deterioration of Debtor's business. Debtor was slow to generate profits at start up due to development costs of the engineering, software, patents, and trademarks. Furthermore, Debtor had to build up its presence in the market through costly advertising at trade shows and such. Debtor was eventually able to grow sales to just under eight million dollars.

5. In 2008, the U.S. economy began its collapse and Debtor's customers could not or did not want to buy new sweepers due to cutbacks and the inability to obtain financing for new equipment. Debtor's management believed that the economy would recover much faster than it did and never "right-sized" its cost structure to the new revenue reality despite the infusion of additional capital. Management worked diligently to create a new line of products to meet the financial economy and achieved great success, but Debtor was has never been able to fully recover. Instead, the Debtor saw a continual decline of its gross revenues. Despite its best efforts, Debtor had no choice but to seek relief under chapter 11 of the Bankruptcy Code.

6. Prior to its bankruptcy filing, the Debtor negotiated an Asset Purchase And Sale Agreement with Roots Multiclean, Ltd. ("Roots") to purchase certain assets of the Debtor (the "Offer"). A true and correct copy of the Offer is attached hereto as Exhibit "A", and its terms are incorporated herein by reference. The Offer from Roots has been the best offer presented to

Debtor for the Target Assets. Moreover, the Debtor has spent over eight (8) months negotiating the sale of the Target Assets. The Debtor is satisfied that its efforts have resulted in the highest price available for the Target Assets.

## THE SALE

7. The Offer from Roots is to purchase the intellectual property, domains, and fixed asset inventory described on Exhibit A to the Offer and the goodwill (hereinafter "Target Assets") for the sum of $775,000. The $775,000 is to be paid at closing as follows: (i) Roots shall pay on the Debtor's behalf the sum of $675,000 in cash at closing; (ii) the remaining $100,000 shall be held in escrow for a period of 24 months from the date of the closing and be applied to indemnity obligations of Seller owed to Buyer relating to claims that arise during Seller's operation of its business or relating to a breach of the Offer, if any. [See § 7(a) of the Offer]. At the conclusion of the 24 months, the escrowed funds shall be paid to the Debtor's bankruptcy estate, or as otherwise provided by the Debtor's plan of reorganization, or as ordered by the Court. [See § 3(a) of the Offer]. In addition to the payment of the $775,000, Roots shall pay the Debtor's estate 5% of the net profits from its operation of the "Victory Division" for a period of 3 years. [See § 3(b) of the Offer]. This payment will be made to the Debtor's estate on an annual basis.

8. The obligation of Roots to proceed with the purchase of the Target Assets is subject to those contingencies contained in Section 6 of the Offer. In addition to obtaining the approval of the Bankruptcy Court, the Offer provides that the Bankruptcy Court must allow Roots to pay, from the sale proceeds, those creditors shown on Exhibit B to the Offer. The Debtor acknowledges that this provision is unusual in the sale of this type, however, Roots is acquiring the goodwill of "Victory Sweepers" along with the Target Assets. Roots has informed

3

the Debtor that, in order for it to proceed with the Purchase, the debts shown on Exhibit B must be paid from the purchase price or it believes the goodwill of "Victory Sweepers" will be substantially damaged. Hence, the Debtor is prepared to show that (i) Roots is the only party which has submitted a bid to purchase the Target Assets; (ii) that the non-payment of the debts shown on Exhibit B will impact the value of the goodwill of "Victory Sweepers"; (iii) that in the event that the goodwill of "Victory Sweepers" is materially damaged then Roots will not proceed with the offer; and (iv) that the liquidation of the Target Assets is likely to result in substantially less money being paid for the Target Assets. One additional contingency is that Roots seeks to enter into an employment agreement with Mark Schwarze who was the principal of Victory Sweepers. The scope of Mr. Schwarze's duties will be in sales and marketing.

9. By this Motion, Debtor asks this Court to approve the sale of the Target Assets to Roots free and clear of all liens, claims, interests, and encumbrances. As noted above, the Debtor has negotiated this sale of a period of many months. It has attempted to market the assets to more than one buyer but has not been successful.

10. If however, upon filing this Motion the Debtor receives a qualified offer from a third party which exceeds the Offer by more than $10,000, the Debtor reserves the right to amend this motion and seek authority to sell the Target Assets via auction. In such event, the Debtor will also submit bidding procedures to govern the auction and sale of the Target Assets. If the bidding procedures are approved, Debtor will conduct an auction at which time Debtor will offer the Target Assets for sale in accordance with the bidding procedures.

### NOTICE OF THE SALE

11. Under Bankruptcy Rule 2002(a) and (c), Debtor requests that notice of the Offer and proposed sale to Roots of the Target Assets, which it shall serve in conjunction with this

Motion upon all creditors of the Debtor and those interested parties via electronic mail or U.S. mail, be deemed adequate and sufficient notice as required by the Bankruptcy Rules.

**BASIS FOR RELIEF**

12. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(I). A debtor-in-possession is given these rights by section 1107(a) of the Bankruptcy Code. 11 U.S.C. § 1107(a).

13. Moreover, section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14. Although Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the use, sale or lease of a debtor's assets, disposition of assets of a debtor should be authorized when there is an articulated business justification for doing so. *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 515 (Bankr. N.D. Ala. 2002); *See also, e.g., In re Lionel Corp.*, 722 F. 2d 1063 (2nd Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (Bankr. W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991).

15. Whether a transaction has a sufficient articulated business justification depends on the facts of the case. *See In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986). A bankruptcy court should consider "all salient factors pertaining to the proceeding and accordingly, act to further the diverse interests of Debtor, creditors and equity holders alike." *Id.*; *Lionel Corp.*, 722 F.2d at 1071. Relevant factors may include: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a

5

Case 17-81731-CRJ11    Doc 11    Filed 06/13/17    Entered 06/13/17 15:13:41    Desc Main
Document      Page 5 of 8

plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition on the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value." *See Continental Airlines*, 780 F.2d at 1226; *Lionel Corp.*, 722 F.2d at 1071; *In re Delaware & Hudson Railway Co.*, 124 B.R. at 176; *In re Condere Corporation*, 228 B.R. 615, 628 (Bankr. S.D. Miss. 1998).

16. Courts have made it clear that a showing of a sound business justification need not be unduly exhaustive but, rather, a Section 363 movant is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984); *see also In re Orion*, 4 F.3d 1095, 1099 (2nd Cir. 1993) ("[t]he business judgment test affords the trustee or debtor-in-possession broad discretion").

17. The relief requested by Debtor is in the best interests of the estate and the estate's creditors because the Sale of the Target Assets by way of the Auction will provide the maximum benefit for all the estate's secured and unsecured creditors, over and above what a plan of reorganization would provide. The Offer provides for the payment of $750,000 to satisfy a large portion of the claims that will be paid out in this case. Moreover, the Sale could produce an even greater benefit for the creditors in the event another bidder may offer even more money than Roots. In short, the sale proposed by Debtor is in the best interests of the estate and the creditors because it provides for a much larger amount of guaranteed money than simply liquidating the assets would produce.

WHEREFORE PREMISES CONSIDERED, Debtor Shadrach, Meshach & Abednego, Inc. respectfully requests that this Court enter an order authorizing Debtor to sell the Target Assets free and clear of all existing properly perfected liens, interests, and encumbrances to

6

Roots based on the terms and conditions set out in the Offer and granting it such other relief that this Court deems just and proper.

Respectfully submitted this 13th day of June, 2017.

*/s/ Kevin D. Heard*
Kevin D. Heard

*/s/ Angela S. Ary*
Angela S. Ary

*Attorneys for Debtor*

Of Counsel:
HEARD, ARY & DAURO, LLC
303 Williams Avenue SW
Park Plaza, Suite 921
Huntsville, Alabama 35801
Tel: (256) 535-0817
Fax: (256) 535-0818
kheard@heardlaw.com
aary@heardlaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2017, I served a copy of the foregoing **Motion to Sell Substantially All of the Debtor's Operating Assets and Intellectual Property Free and Clear of Liens, Claims, Interests, and Encumbrances** on the parties listed below and on the attached matrix by depositing the same in the United States Mail, postage prepaid and properly addressed, via electronic mail at the e-mail address below, unless the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures as indicated below:

**Notice will be electronically mailed to:**

Richard Blythe
Richard_Blythe@alnba.uscourts.gov, courtmaildec@alnba.uscourts.gov

**Notice will be mailed by U.S.P.S. to:**

Michael K. Wisner
D. Ashley Jones
Chad W. Ayres
*Attorneys for Roots Multiclean, Ltd.*
WILMER & LEE, PA
100 Washington Street Northeast
Huntsville, AL 35801

Richard E. O'Neal
Assistant U.S. Attorney
*Counsel for Internal Revenue Service*
1801 4th Avenue North
Birmingham, AL 35203

Kelly Askew Gillikin
*Attorney for Alabama Dept. of Revenue*
PO Box 320001
Montgomery, AL 36132-0001

**All parties on the attached matrix were served via U.S. Mail.**

*/s/ Kevin D. Heard*
Kevin D. Heard